NOT FOR PUBLICATION                                                                                    [1]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SABENA INGALLS, | |
| Petitioner, | |
| v. | Civil No. 06-4665 (FLW) |
| UNITED STATES OF AMERICA | **OPINION** |
| Respondent. | |

**<u>WOLFSON, District Judge</u>**

Presently before the Court is a Motion to Vacate, Set Aside or Correct a Sentence pursuant to 28 U.S.C. § 2255 by Petitioner, Sabena Ingalls ("Ingalls"). Petitioner alleges: (1) that her trial counsel, Joseph S. Caruso ("Caruso"), was ineffective for failing to investigate relevant factors underlying Ingalls' mental capacity including physical abuse and alcohol dependency; (2) that the sentence imposed by this Court is disparate and excessive in relation to similarly situated defendants; and (3) that following her incarceration, Ingalls has undertaken significant post-conviction rehabilitative efforts requiring this Court to grant a downward departure in Petitioner's sentence. The Court has considered the moving and opposition papers and for the reasons set forth below, the Court denies Petitioner's motion.

**I. BACKGROUND**

On October 28, 2003, a federal grand jury returned a 37 count Indictment charging Ingalls and her co-defendants with a variety of counts related to a scheme to use proceeds from an illegal drug trafficking operation to acquire residential properties in and around Camden County, New Jersey.  The counts included conspiracy to commit mail and wire fraud, conspiracy to distribute crack and powder cocaine, and conspiracy to commit money laundering as well as the substantive charges of wire fraud, mail fraud and money laundering.   Specifically, between October 1996 and April 2003, the government alleged that Ingalls, a licensed real estate agent, used money from a cocaine business to purchase properties and to have cosmetic repairs performed upon the properties.  Subsequently, the properties would be sold at substantial profits to unqualified buyers who had obtained mortgage loans insured by the U.S. Department of Housing and Urban Development ("HUD"), contract loans administered by the U.S. Department of Veterans Affairs, and conventional mortgage loans administered by private lending institutions.

On May 10, 2004, Ingalls entered a plea of guilty to count 24 of the Indictment charging her with engaging in a money laundering conspiracy in violation of 18 U.S.C. §1956(h).  Pursuant to the terms of the plea agreement, Ingalls agreed to cooperate with the government and waived her right to appeal or collaterally attack the resulting conviction under certain circumstances.  In return, the government agreed to dismiss the remaining counts against her and to file a motion for downward departure, in its discretion, if Ingalls provided substantial assistance.

On June 13, 2005, Ingalls appeared before this Court for sentencing.  Ingalls faced a maximum statutory prison sentence of ten years for violating 18 U.S.C. § 1956(h) with a

Sentencing Guidelines range of 70 to 87 months. In addition, as a result of her cooperation, which included testifying at the trial of co-Defendant, Kenneth Jenkins, the government filed a downward departure motion on April 22, 2005. At the close of the sentencing hearing, I sentenced Ingalls to a 60 month term of imprisonment to be followed by a three year term of supervised release and ordered Ingalls to pay restitution in the amount of $290,769.32.

Thereafter, on September 25, 2006, Ingalls filed the instant petition pursuant to 28 U.S.C. § 2255. Petitioner contends that she was denied the effective assistance of counsel when Caruso failed to investigate relevant factors related to her mental capacity including physical abuse and alcohol dependency. In addition, petitioner argues that the sentenced imposed by this court is excessive related to similarly situated defendants. Finally, petitioner contends that she has undertaken significant post-conviction rehabilitative efforts and is therefore entitled to a downward departure.

**II. DISCUSSION**

1. Ineffective Assistance of Counsel

Pursuant to 28 U.S.C. § 2255 a petitioner may move to vacate, set aside or correct a sentence on the grounds "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. Thus, Petitioner is entitled to relief only if she can establish that she is in custody in violation of federal law or the Constitution.

Initially, the Court must consider whether Ingalls is entitled to an evidentiary hearing. A

district court is given discretion to determine whether to hold an evidentiary hearing on a habeas petition under Section 2255. See Government of the Virgin Islands v. Forte, 865 F.2d 59, 62 (3d Cir.1989).  In exercising that discretion, a court must first determine whether the petitioner's claims, if proven, would entitle her to relief, and then consider whether an evidentiary hearing is needed to determine the truth of the allegations. See Government of the Virgin Islands v. Weatherwax, 20 F.3d 572, 574 (3d Cir.1994).  Accordingly, a court may dismiss a motion brought under Section 2255 without a hearing if the "motion, files, and records, 'show conclusively that the movant is not entitled to relief.' " United States v. Nahodil, 36 F.3d 323, 326 (3d Cir.1994). Where the record affirmatively indicates that a petitioner's claim for relief is without merit, the claim may be decided on the record without a hearing. See Government of Virgin Islands v. Nicholas, 759 F.2d 1073, 1075 (3d Cir.1985). Thus, if the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted in support of a § 2255 motion, or if the movant would not be entitled to relief as a matter of law even if the factual predicates as alleged in the motion are true, it is not an abuse of discretion to elect not to conduct an evidentiary hearing. See Nicholas, 759 F.2d at 1075

     In the instant matter, Ingalls alleges that she was provided ineffective assistance by her trial counsel, Caruso, in violation of the Sixth Amendment.  Specifically, Ingalls contends that Caruso failed to conduct any investigation into her mental capacity including allegations of physical abuse by her co-defendant and boyfriend, Kenneth Jenkins, and an alcohol dependency problem.  For the reasons set forth below, the Court finds that an evidentiary hearing is not necessary because the record demonstrates that Ingalls is not entitled to the relief requested.

     The Sixth Amendment right to counsel protects a defendant's fundamental right to a fair

trial. Strickland v. Washington, 466 U.S. 668, 684-85 (1984). This right to counsel includes the right to effective assistance of counsel. Id. at 686; McMann v. Richardson, 397 U.S. 759, 771 n. 14 (1970). In Strickland, the Court held that "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686.  Thus, to prevail on a claim of ineffective assistance of counsel, a petitioner must satisfy a stringent two part test establishing that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense.  Strickland, 466 U.S. 668, 687 (1984).  To prevail under the first prong, petitioner must show that defense counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id.  Morever, under the second prong, petitioner must demonstrate that but for counsel's errors, there is a reasonable probability that the result of the trial would have been different.  Id. at 694.  According to the Strickland court, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

In the instant matter, Plaintiff initially contends that Caruso failed to investigate factors that could have affected her mental capacity including physical abuse by Kenneth Jenkins.  The Court does not agree.  Indeed, physical abuse by Mr. Jenkins was the subject of pre-trial motions in this case and was later admitted through petitioner's testimony at trial.  See Ingalls' Trial Testimony at 30-31 and 133-134.  Moreover, Petitioner's counsel, Caruso, raised the issue of physical abuse prior to Ingalls' sentencing; for example, in a May 18, 2005 letter to this Court Caruso explained, "[n]ot mentioned in Tyanne Ingalls' letter and the letter from the U.S. Attorney, is the amount of abuse Sabena took at the hands of her common law husband, Kenny

Jenkins. In fact, Sabena does not mention it either. But it was a major obstacle for her to address and ultimately admit behind closed doors with the agents and U.S. Attorneys. Only after being confronted with witness statements of being choked in public after she complained of Kenny cooking crack in their house, did she break down and admit same. I am not a psychologist, but that has to affect a person." Caruso letter (May 18, 2005), Gov't Br., Ex. H.  As evidenced by Caruso's letter, the issue of abuse and its affect on petitioner's mental capacity was identified and raised by Petitioner's trial counsel prior to her sentencing.  Thus, Petitioner's claim that Caruso did not investigate this factor is without merit.

      Petitioner additionally alleges that her trial counsel was ineffective for failing to raise her alleged "serious alcohol dependency problem." Pet's Br. at 5.  Specifically, Petitioner relies on an affidavit of investigator Hiram R. Johnston, Jr., ("Johnston"), who attests that unnamed "[w]itnesses. . . disclosed that Sabena Ingalls appeared to suffer from a severe alcohol dependency problem for which she was being counseled by. . .Ms. April Lomax, who is now currently employed as a Clinical Psychologist at the New Jersey State Prison." Johnston Aff. ¶ 6. Moreover, Johnston contends that Petitioner's daughter and her niece "repeatedly requested" that Caruso explore Ingalls' alcohol problem to no avail.  For these reasons, Petitioner now claims that if Caruso had explored her alcohol dependency, the outcome of the proceedings would have been different.

      Initially, I find that the record in this matter lacks any factual basis for Petitioner's claim of alleged alcohol dependency.  For example, during the plea colloquy, I specifically asked Petitioner whether she had ever been treated for a mental illness or drug addiction or if she was under the influence of any drug, medication or alcoholic beverage; Petitioner answered "No" to

all these queries.  Transcript of Plea of Sabena Ingalls, May 10, 2004 ("Ingalls Plea Tr.") 3:4-15.  Moreover, although Johnston's affidavit suggests that "Superior [sic] Ingalls and her niece, Tyanne Ingalls" repeatedly asked Caruso to investigate Petitioner's alcohol problem, neither Superia nor Tyanne mention such a problem in their letters to this Court prior to Petitioner's sentencing.  Indeed, none of the numerous letters submitted to this Court on Petitioner's behalf even hint at an alcohol problem.  Thus, there is nothing in the record to support Petitioner's after the fact suggestion that she suffered from an alcohol dependency problem either at the time of her involvement with the conspiracy or during the investigation and plea, or at the time of sentencing.

Further, the Court notes that according to Johnston's report, Caruso was made aware of Petitioner's alcohol problem by Superia and Tyanne Ingalls.  Thus, even if this Court accepts that Caruso knew about this issue and chose not to raise it as a defense or mitigating factor at sentencing, it is well-established that "counsel must be afforded a measure of latitude and discretion in the preparation and presentation of a case."  U.S. v. Williams, 615 F.2d 585, 594 (3d Cir. 1980).  For these reasons, I find that Petitioner has not established that her trial counsel was either deficient nor that any alleged deficiency would have changed the outcome of her sentencing pursuant to the test set forth in Strickland.  Thus, Petitioner cannot succeed on her claim of ineffective assistance of counsel.

2. Disparate and Excessive Sentence

Petitioner additionally contends that although the sentence imposed by this Court falls well below the guideline range, her sentence was still disparate and excessive given the totality of

the circumstances. The Court does not agree.

Initially, as discussed above, Petitioner faced a statutory maximum sentence of ten years based on her plea of violating 18 U.S.C. § 1956(h) with a Sentencing Guidelines range of 70 to 87 months imprisonment. As part of the sentencing, I reviewed the pre-sentence report with Petitioner and her trial counsel and heard from all parties including Petitioner. Moreover, I received numerous submissions from Petitioner's trial counsel and other supporters prior to her sentencing as well as a motion for a downward departure filed by the government. Ultimately, Ingalls was sentenced to a sixty month term of imprisonment to be followed by a three year term of supervised release. Thus, Petitioner's sentence falls well below the guideline range.

Moreover, the Court notes that the only support Petitioner relies on to substantiate her argument that her sentence was disparate and excessive is a comparison of the sentence imposed upon her with the sentence imposed upon Milton Milan, the former mayor of Camden, New Jersey, in an unrelated case. Aside from this comparison, Petitioner provides no case law or other material to support the theory that her 60 month sentence which was well below the 70-87 month guideline range was disparate and excessive. Further, Petitioner does not refer to the much more relevant sentences imposed upon her co-defendants; for example, Kenneth Jenkins received a 30 year sentence and Ronald Rogers, a co-defendant who played a much more minor role in the scheme than either Petitioner or Jenkins, received a 48 month sentence. Indeed, the record in the instant matter lays bare Petitioner's role as a leader and organizer of this scheme; for example, at the sentencing, I noted, "[f]urthermore, defendant is charged as an organizer leader manager supervisor in criminal activity and the offense level there was increased by two levels and all of those matters and those enhancements which were stipulated to at the time the

8

defendant entered a plea. . . and I find by a preponderance of the evidence every one of those enhancements was proven." Ingalls Sentencing Tr., 3:22-4:2.  Moreover, in considering the sentencing factors pursuant to 18 U.S.C. § 3553(a), I found that Petitioner was motivated by greed, id., 28:24, that she was the "brains" behind the scheme, id., 31:1-34:6, and that the scheme victimized numerous people.  Id.   Specifically, I explained that while Petitioner's scheme enabled her to get out of Camden, she "victimized those who remained [there]. . .They are your victims. And most of them who are suffering in poverty. . .are even worse off now. . . Some of them are on the street now. . And you knew what was happening at every step of the way. . .This wasn't a case of you just going along and being there; you. . .initiated. . .every step. . .there are no excuses for what you did. I'm sure there is a lot of goodness in you. But that took a back door to what you wanted to do when greed motivated you and what you did to these people." Id. 32-34. In addition, I noted that:

> were it not for cooperation here, this would have been a case the Court would have considered an upward departure if I was still strictly sentencing under Guidelines. The length of this offense, seven years, the amount of victims, vulnerable victims, Erika Santos and her mother, mentally disabled, buying homes? Because Sabena said it was okay. . . I had such a hard time listening to [trial counsel say] that it would be tremendous to Ms. Ingalls and her family and serve justice in this case if she received a non-custodial term. Nothing could be further from justice. This Court has the obligation to impose justice in this case and there would be no justice and no statement to those victims and the people of this city if she were to walk out this door today with no sentence. . . How do I deter others who might think about property flipping schemes, fraud, praying upon innocent victims in this city. . .what message is sent?. . .[A] sentence of no time is totally uncalled for and inappropriate and I would be remiss as a judicial officer to find anything else. That would be a miscarriage of justice.

Id. 35-37.

In light of my findings and the sentences received by co-defendants, this Court cannot

find that Petitioner's sentence was disparate or excessive.

Finally, the Court notes that Petitioner entered into a valid plea agreement in which she waived future challenges to her sentence or conviction if certain circumstances were met. Respondent's Motion to Dismiss ("Resp. Mot."), ex. A at 6 ("this Office and Sabena Ingalls waive certain rights to file an appeal, collateral attack, writ, or motion after sentencing, including but not limited to. . . a motion under 28 U.S.C. § 2255, which challenges the sentencing court's determination or imposition of the offense level or its acceptance of any of the stipulations on Schedule A."). Numerous district courts in this Circuit have held that a defendant's waiver of the right to collaterally attack her sentence by filing a motion pursuant to 28 U.S.C. § 2255 is valid and enforceable. See, e.g., Simon v. U.S., 2006 WL 3534600, at *5 (D.N.J. Dec. 7, 2006); Darr v. United States, 2006 WL 2645119, at *2 (D.N.J. Sept. 14, 2006); United States v. Minott, 2006 WL 2372118, at *1 (W.D. Pa. Aug. 15, 2006); United States v. Lam, 2006 WL 1530875, at *2-3 (E.D. Pa. June 2, 2006). In the instant matter, this Court engaged in the following inquiry with Petitioner during the plea colloquy:

> THE COURT: Ms. Ingalls, attached to the plea agreement you have signed is a set of stipulations Schedule A, and in there, in Paragraph 9 and 10, it deals with the issue of appeals or the right to collaterally attack a sentence. Do you understand that under certain circumstances you have given up your right to file an appeal or collaterally attack your sentence in this matter?
>
> THE DEFENDANT: Yes.
>
> . . .
>
> THE COURT: And you realize, as we have discussed before, that under certain circumstances you and the government have given up your right to appeal any sentence that I impose?

>THE DEFENDANT: Yes.
>
>. . .
>
>THE COURT: Do you understand if the sentence imposed is more severe than you expected, you still will be bound by your plea and will not have a right to withdraw it?
>
>THE DEFENDANT: Yes.
>
>. . .
>
>THE COURT: It is the finding of the Court in the case of United States versus Ingalls that the defendant is fully [competent] and capable of entering an inform[ed] plea, that she is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. The plea is therefore accepted and the defendant is now adjudged guilty of that offense.

Ingalls Plea, 10:24-11:7; 19:7-11; 20:1-5; 30:25-31:9.

Moreover, in her plea agreement, Ingalls stipulated that she agreed to be sentenced pursuant to the United States Sentencing Guidelines and that she had committed several Specific Offense Characteristics that would result in sentence enhancements; for example, Petitioner stipulated that the offense involved more than ten victims including at least one vulnerable victim, that the offense involved sophisticated means and that she was an organizer, leader, manager or supervisor of the activity. Ingalls Plea Agreement ("Ingalls Plea Agr.") at 9-10. Further, Ingalls specifically waived her right to file any appeal, collateral attack, writ or motion after sentencing that would challenge the sentence if the total offense level determined by the court was equal to or less than 27. Id. at 10. In the instant matter, I specifically found that the total applicable offense level was 27. Ingalls Sentencing Tr., 5:6-9 (" The defendant has then

11

been provided with an additional three-level adjustment for acceptance of responsibility which are appropriate bringing this to a <u>total offense level of 27</u>.")(emphasis added).   Therefore, the express condition upon which Petitioner agreed to waive her right to challenge the sentence was met.

In light of Petitioner's plea and the sentences received by her co-defendants, and because Petitioner provides no basis for this Court to find that her sentence was excessive or that the waiver of her right to collaterally attach her sentence was not entered into knowingly or voluntarily, I find that Plaintiff cannot succeed on this claim.

3. <u>Post-Conviction Rehabilitative Efforts</u>

Finally, Petitioner argues that she has undertaken significant post-conviction rehabilitative efforts which warrant a downward departure in her sentence.  Initially the Court notes that pursuant to U.S.S.G. § 5K2.19, post-sentencing rehabilitation does not furnish a basis for a downward departure.  U.S.S.G. § 5K2.19; <u>United States v. Herzog</u>, 186 Fed. Appx. 314, 317 (3d Cir. July 19, 2006).   Moreover, even if there was a legal basis for this review, the <u>Herzog</u> Court held that "[b]efore the current version of § 5K2.19 was enacted, we concluded that a defendant's rehabilitative effort while incarcerated had to be extraordinary to warrant a downward departure."  186 Fed. Appx. at 317.  In the instant matter, however, Petitioner does not enumerate or explain in any way the extent of her rehabilitative efforts.  Indeed, Petitioner's brief merely states that she "has constantly participated [sic] rehabilitation efforts that are remarkable and indicate real, positive behavioral change such that they are substantially in excess of that ordinarily present since her incarceration on the present offense."  Pet. Br. at 7.  Thus,

12

Plaintiff has not described in any level of detail – general or specific– the nature of her rehabilitative efforts; thus, even if Petitioner's post-conviction rehabilitation efforts represented a proper basis for a downward departure, it would not be warranted in this case. For these reasons, Petitioner cannot succeed on her claim for downward departure due to post-sentencing rehabilitative efforts.

### III. CONCLUSION

For the forgoing reasons, Petitioner's motion to vacate, set aside or correct her June 13, 2005 sentence pursuant to 28 U.S.C. § 2255 is hereby denied. An appropriate order will follow.

Dated: January 10, 2007
                s/ Freda L. Wolfson
                Honorable Freda L. Wolfson
                United States District Judge